# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

BRIAN PALMER,

      Plaintiff,

                                    Case No. 14-14820

v.                                 HON. DENISE PAGE HOOD

BILL SCHUETTE, Attorney General
and SCOTT TETER, Assistant
Attorney General,

      Defendants.

_____/

## ORDER GRANTING DEFENDANTS' MOTION TO DISMISS [#7], GRANTING PLAINTIFF'S MOTION FOR LEAVE TO FILE SUPPLEMENTAL BRIEF [#13], AND DENYING DEFENDANTS' MOTION TO STRIKE SUPPLEMENTAL BRIEF [#14]

## I.    INTRODUCTION

On December 19, 2014, Plaintiff Brian Palmer filed a three-count Complaint against Defendants Bill Schuette ("Schuette") and Scott Teter ("Teter"). Defendants filed a Motion to Dismiss [Dkt. No. 7], which the parties have fully briefed,[1] and the

---

[1] Plaintiff filed, without seeking concurrence or leave of the Court, a "Supplemental Brief to Motion to Dismiss" ("Supplemental Brief"). [Dkt. No. 12] The following day, apparently after Defendants contacted Plaintiff in opposition to the Supplemental Brief, Plaintiff filed an ex parte "Motion for Leave to File Supplemental Brief." [Dkt. No. 13] A day later, Defendants filed a "Motion to Strike Supplemental Brief" [Dkt. No. 14], to which Plaintiff responded. Even though there is no authority for unilaterally filing a supplemental brief on a dispositive motion and even though Plaintiff failed to seek concurrence from Defendants, the Court finds that the interests of justice strongly favor the consideration of Plaintiff's Supplemental Brief. Accordingly, the

Court held a hearing on Defendants' Motion to Dismiss.  For the reasons that follow, the Court: (1) grants Defendants' Motion to Dismiss with prejudice as to Counts I and II,  (2) grants Defendants' Motion to Dismiss without prejudice as to Count III, and (3) dismisses Plaintiff's cause of action consistent with those rulings.

## II.    BACKGROUND

Plaintiff is a former Michigan state representative who was charged in a misdemeanor complaint with, and entered a no-contest plea in the 54A District Court to, one count of willful neglect of duty under M.C.L. § 750.478.  M.C.L. § 750.478 provides:

> When any duty is or shall be enjoined by law upon any public officer, or upon any person holding any public trust or employment, every willful neglect to perform such duty, where no special provision shall have been made for the punishment of such delinquency, constitutes a misdemeanor punishable by imprisonment for not more than 1 year or a fine of not more than $1,000.00.

The misdemeanor complaint was used as the factual basis for the no-contest plea.  The word "scheme" appeared several times in the misdemeanor complaint; the words "Ponzi," "fraud," and "felony" did not appear in the misdemeanor complaint.

Teter is an assistant attorney general in the office of the Michigan Attorney General.  Teter is the assistant attorney general who: (a) headed the investigation that

---

Court: (a) **grants** Plaintiff's Motion for Leave to File Supplemental Brief, (b) **denies** Defendants' Motion to Strike Supplemental Brief, and (c) has reviewed and considered Plaintiff's Supplemental Brief in deciding Defendants' Motion to Dismiss.

resulted in Plaintiff being charged; (b) brought the misdemeanor complaint against Plaintiff; and (c) appeared at the plea hearing. Schuette is the Attorney General for the State of Michigan, and he authorized the charge against Plaintiff.

On December 20, 2013, the same day that Plaintiff entered his no-contest plea and was sentenced, Schuette issued a press release regarding Plaintiff's conviction on the Michigan Attorney General website. Teter contributed to the information set forth in the press release. The press release was titled "Schuette Announces Conviction of Former Macomb State Representative for Role in Ponzi Scheme." The Ponzi scheme referenced in the press release was conducted by API Worldwide, Inc. ("API"). The press release stated that Plaintiff:

(1)    "assisted two other men to operate a $9 million Ponzi scheme that defrauded more than 150 persons between 2006 and 2012;"

(2)    "used his position as an elected official to assist operators" in operating a fraudulent investment company;

(3)    had invested "$400,00 with Ripley [an alleged operator of the Ponzi scheme] in an unregistered security;"

(4)    was convicted due to "using his position as an elected official to assist the ring-leader of a $9 million Ponzi scheme;"

(5)    "met with potential investors on behalf of Ripley and API, with the knowledge that Ripley was attempting to circumvent the Securities Act, and that Palmer did not report the conduct to proper authorities;"

(6)    "carried a cell phone provided by API and answered calls from potential investors even while on the House [of Representatives] floor;"

3

(7)     in order "to circumvent state security laws, . . . assisted Ripley by providing documents to make the scheme appear legitimate and signed investment guarantees;" and

(8)     knowingly allowed "Ripley [to use Plaintiff's] name and position as a public official to vouch for and sell the API scheme to potential victims."

Dkt. No. 1, Paragraphs 24-32.  Plaintiff alleges that the eight statements from the press release identified above—and the title of the press release—are false and that Defendants knew that the statements were false at the time the press release was issued.  Plaintiff further alleges that the press release remained on the Michigan Attorney General website at the time the Complaint was filed and has been the basis for other false articles and online postings about Plaintiff being involved in a Ponzi scheme.

Prior to filing the Complaint, Plaintiff's counsel asked Schuette to remove the press release from the Michigan Attorney General website, but Schuette declined to remove it.  Plaintiff's Complaint alleges that Defendants, acting in their individual capacities:[2] (1) violated Plaintiff's due process rights under the Fifth and Fourteenth Amendments (Count I); (2) violated Plaintiff's Fourth Amendment right to be free

---

[2]As the caption reflects, Plaintiff sued Defendants as "Bill Schuette, Attorney General and Scott Teter, Assistant Attorney General." *See* Dkt. No. 1, PgID 1.  In his response brief, Plaintiff states that he is not suing Defendants in their official capacities.  If that was his intention, "[b]ecause Defendants are state officials, any suit for monetary damages in their official capacity [would be] deemed to be an action against the state of Michigan and therefore subject to dismissal under the Eleventh Amendment." *Buchanan v. Metz*, 6 F.Supp.3d 730, 738 (E.D. Mich. 2014) (citing *Johnson v. Unknown Dellatifa*, 357 F.3d 539, 545 (6th Cir. 2004)).

4

from prosecution without probable cause (Count Two); and (3) defamed Plaintiff under the laws of the State of Michigan (Count Three).

## III.   APPLICABLE LAW & ANALYSIS

### A.   Standard of Review

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of the plaintiff's complaint.   Accepting all factual allegations as true, the court will review the complaint in the light most favorable to the plaintiff.   *Eidson v. Tennessee Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007).   As a general rule, to survive a motion to dismiss, the complaint must state sufficient "facts to state a claim to relief that is plausible on its face."   *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).   The complaint must demonstrate more than a sheer possibility that the defendant's conduct was unlawful.   *Id.* at 556.   Claims comprised of "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."   *Id.* at 555.   Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."   *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### B.   Qualified Immunity

As the United States Supreme Court recently stated:

5

> The doctrine of qualified immunity shields officials from civil liability so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right. We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate. Put simply, qualified immunity protects all but the plainly incompetent or those who knowingly violate the law.

*Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (citations and quotation marks omitted).

Qualified immunity is a two-step process. *See, e.g., Saucier v. Katz*, 533 U.S. 194 (2001); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). First, the Court must determine whether, based upon the applicable law, the facts viewed in a light most favorable to the plaintiff show that a constitutional violation has occurred. *Causey v. Bay City*, 442 F.3d 524, 528 (6th Cir. 2006). Second, the Court must determine whether the violation involved a clearly established constitutional right of which a reasonable person would have known. *Id.*; *Sample v. Bailey*, 409 F.3d 689, 695-96 (6th Cir. 2005). Only if the undisputed facts, or the evidence viewed in a light most favorable to the plaintiff, fail to establish a prima facie violation of clear constitutional law can this Court find that the Defendants are entitled to qualified immunity. *Turner v. Scott*, 119 F.3d 425, 428 (6th Cir. 1997).

Once a government official has raised the defense of qualified immunity, the plaintiff "bears the ultimate burden of proof to show that the individual officers are

not entitled to qualified immunity." *Cockrell v. City of Cincinnati*, 468 F. App'x 491, 494 (6th Cir. 2012) (citation omitted). A plaintiff must also establish that each individual defendant was "personally involved" in the specific constitutional violation. *See Salehphour v. University of Tennessee*, 159 F.3d 199, 206 (6th Cir. 1998); *Bennett v. Schroeder*, 99 F. App'x 707, 712-13 (6th Cir. 2004) (unpublished) ("It is well-settled that to state a cognizable Section 1983 claim, the plaintiff must allege some personal involvement by the each of the named defendants").

## C.    Analysis

Plaintiff has alleged that Defendants' press release contained false and defamatory statements that resulted in Plaintiff suffering "severe and substantial damages[,] . . . includ[ing] loss of earnings and loss of earnings capacity, lost business opportunities, litigation expenses including attorney fees, loss of reputation, humiliation, embarrassment, inconvenience, mental and emotional anguish, and distress," all of which must be taken as true for purposes of deciding Defendants' Motion to Dismiss. *See* Dkt. No. 1, ¶¶ 47, 57, 80.

### 1.    Count I

In Count I, Plaintiff alleges that Defendants violated his due process rights under the Fifth and Fourteenth Amendments.  Defendants accurately note, and Plaintiff does not contest, that the Fifth Amendment is applicable only to federal

7

actors, not state actors. *See, e.g., Scott v. Clay Cty.*, 205 F.3d 867, 873 n.8 (6th Cir. 2000). As Defendants are state actors, not federal actors, the Court dismisses the Fifth Amendment component of Count I of Plaintiff's Complaint.

A procedural due process claim requires that a plaintiff plead facts sufficient to establish that: (1) he has an interest protected by the Due Process Clause of the Fourteenth Amendment; (2) he was deprived of this protected interest within the meaning of the Due Process Clause; and (3) the State did not afford him adequate procedural rights prior to depriving him of this protected interest. *See, e.g., Hahn v. Star Bank*, 190 F.3d 708, 716 (6th Cir. 1999).

Plaintiff asserts that the United States Supreme Court has recognized a civil rights claim for a due process violation where an individual is defamed by a government official, without being afforded due process. Plaintiff maintains that he has a clearly established liberty interest protected by the Due Process Clause of the Fourteenth Amendment with respect to his good name, reputation, honor, and integrity. *Board of Regents v. Roth*, 408 U.S. 564, 573 (1972); *Wisconsin v. Constantineau*, 400 U.S. 433, 437 (1971) ("Where a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential.").

Plaintiff's argument does not account for the fact that *Roth, Constantineau* and

8

*McGrath* were clarified by the Supreme Court's subsequent decision in *Paul v. Davis*,

424 U.S. 693 (1976). The *Paul v. Davis* court rejected the proposition that defamation

alone was sufficient to form a constitutional violation pursuant to the Fourteenth

Amendment Due Process Clause:

> Respondent, however, has pointed to no specific constitutional guarantee safeguarding the interest he asserts has been invaded. Rather, he apparently believes that the Fourteenth Amendment's Due Process Clause should *ex proprio vigore* extend to him a right to be free of injury wherever the State may be characterized as the tortfeasor. But such a reading would make of the Fourteenth Amendment a font of tort law to be superimposed upon whatever systems may already be administered by the States.

*Id.* at 700-01. With respect to the language from *Constantineau* quoted above, the

*Paul v. Davis* court stated that the words "because of what the government is doing

to him:"

> [R]eferred to the fact that the governmental action taken in that case deprived the individual of a right previously held under state law [–] the right to purchase or obtain liquor in common with the rest of the citizenry. . . . it was that alteration of legal status, combined with the injury resulting from the defamation, [that] justified the invocation of procedural safeguards.

*Id.* at 708-09 (emphasis added).

Regarding *Roth*, the *Paul v. Davis* court stated that "the defamation had to occur

in the course of the termination of employment." *Id.* at 710. In his Supplemental

Brief, Plaintiff relies on *Joint Anti-Fascist Refugee Committee v. McGrath*, 341 U.S.

123 (1951).  In *McGrath*, Justice Frankfurter stated <u>in a concurring opinion</u> that, for

organizations labeled "communist" by the Attorney General, "[t]he right to be heard

before being condemned to suffer grievous loss of any kind, even though it may not

involve the stigma and hardships of a criminal conviction, is a principle basic to our

society." *Id.* at 168 (Frankfurter, J., concurring).  First, as this language is from a

concurring opinion, it is not binding, nor does it create a constitutional right.  Second,

this language was addressed by the *Paul v. Davis* court in the context of its

consideration of *Constantineau*, with the court holding that the invocation of

procedural safeguards are justified only when there is an "alteration of legal status .

. . , combined with the injury resulting from the defamation." *Paul v. Davis*, 424 U.S.

at 708-09.

> In discussing its precedent generally, the Supreme Court stated that:

> In each of these cases [where the Supreme Court held that procedural
> due process was required], as a result of the state action complained of,
> a right or status previously recognized by state law was distinctly altered
> or extinguished. <u>It was this alteration, officially removing the interest
> from the recognition and protection previously afforded by the State,
> which we found sufficient to invoke the procedural guarantees contained
> in the Due Process Clause of the Fourteenth Amendment.  But the
> interest in reputation alone which respondent seeks to vindicate in this
> action in federal court is quite different from the "liberty" or "property"
> recognized in those decisions</u>.

*Id.* at 711 (emphasis added).  The Supreme Court then held:

> [An] interest in reputation is simply one of a number which the State

10

> may protect against injury by virtue of its tort law, providing a forum for vindication of those interests by means of damages actions. And any harm or injury to that interest, even where as here inflicted by an officer of the State, does not result in a deprivation of any "liberty" or "property" recognized by state or federal law, nor has it worked any change of respondent's status as theretofore recognized under the State's laws. For these reasons <u>we hold that the interest in reputation asserted in this case is neither "liberty" nor "property" guaranteed against state deprivation without due process of law</u>.

*Id.* at 712 (emphasis added).

Based on *Paul v. Davis,* in order for the due process protection of a person's good name to be triggered, a plaintiff must establish that there had been: (a) a stigma to his reputation; (b) a state action altering or extinguishing "a right or status previously recognized by state law," and (c) a contemporaneous tangible loss. *Id.* at 708-12.  Fifteen years later, the Supreme Court again held there is no constitutional violation for defamation itself:

> In *Paul v. Davis*, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976), the plaintiff's photograph was included by local police chiefs in a "flyer" of "active shoplifters," after petitioner had been arrested for shoplifting. The shoplifting charge was eventually dismissed, and the <u>plaintiff filed suit under 42 U.S.C. § 1983 against the police chiefs, alleging that the officials' actions inflicted a stigma to his reputation that would seriously impair his future employment opportunities,</u> and thus deprived him under color of state law of liberty interests protected by the Fourteenth Amendment.
>
> <u>We rejected the plaintiff's claim, holding that injury to reputation by itself was not a "liberty" interest protected under the Fourteenth Amendment</u>. 424 U.S., at 708–709, 96 S.Ct., at 1164–1165. We pointed out that our reference to a governmental employer stigmatizing an

11

employee in *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), was made in the context of the employer discharging or failing to rehire a plaintiff who claimed a liberty interest under the Fourteenth Amendment. <u>Defamation, by itself, is a tort actionable under the laws of most States, but not a constitutional deprivation</u>.

*Siegert v. Gilley*, 500 U.S. 226, 233 (1991) (emphasis added).

The *Siegert* court concluded:

The facts alleged by Siegert cannot, in the light of our decision in *Paul v. Davis*, be held to state a claim for denial of a constitutional right. This is not a suit against the United States under the Federal Tort Claims Act[,] . . . but a suit against Siegert's superior at St. Elizabeths Hospital. <u>The alleged defamation was not uttered incident to the termination of Siegert's employment by the hospital, since he voluntarily resigned from his position at the hospital, and the letter was written several weeks later. The statements contained in the letter would undoubtedly damage the reputation of one in his position, and impair his future employment prospects</u>. But the plaintiff in *Paul v. Davis* similarly alleged serious impairment of his future employment opportunities as well as other harm. Most defamation plaintiffs attempt to show some sort of special damage and out-of-pocket loss which flows from the injury to their reputation. But <u>so long as such damage flows from injury caused by the defendant to a plaintiff's reputation, it may be recoverable under state tort law but it is not recoverable in a *Bivens* action</u>. Siegert did assert a claim for defamation in this case, but made no allegations as to diversity of citizenship between himself and respondent.

*Siegert*, 500 U.S. at 233-34 (emphasis added).

Defendants contend that Plaintiff has not established any liberty or property interest – or any other right granted to him by state or federal law – that is protected under the Fourteenth Amendment. Plaintiff contends he has alleged that the protected

12

interest(s) Defendants "infringe[d] . . . [are] both his *current* and *future* employment opportunities[.]" Dkt. No. 12, at 2 n.1 (emphasis in original). Under Michigan law, loss of employment is a protected right. *See, e.g., Lowe v. Hotel & Restaurant Employees Union, Local 705*, 389 Mich. 123, 148 (1973) ("Every [person's] employment is of utmost importance to him. It occupies his time, his talents, and his thoughts. It controls his economic destiny. It is the means by which he feeds his family and provides for their security. It bears upon his personal well-being, his mental and physical health."). *See also Sampson v. Murray*, 415 U.S. 61, 95 (1974) ("Employability is the greatest asset most people have. Once there is a discharge from [governmental employment], dismissal may be a badge that bars the employee from other employment. The shadow of that discharge is cast over the area where private employment may be available.").

As Defendants argue, Plaintiff's Complaint does not allege that the allegedly defamatory comments affected his employment status at the time the press release was issued; Plaintiff's allegations pertain only to future employment opportunities. The Sixth Circuit has recognized that when "the only interest impaired [is] that in future employment, rather than an interest in employment presently enjoyed," there is no violation of a constitutional right. *Mertik v. Blalock*, 983 F.2d 1352, 1262-63 (6th Cir. 1993). "A stigma to a reputation that affects only future employment opportunities

does not give rise to a protected liberty interest." *Id.*

The Court finds that Plaintiff has not alleged in his Complaint that any current employment was affected.  Contrary to Plaintiff's argument in his Supplemental Brief that "Defendants infringe[d] . . . his *current* . . . employment opportunities," Paragraph 47 of his Complaint does not contain any reference to "current employment" or "current employment opportunities."  In Paragraph 47, Plaintiff alleged only that the defamatory comments caused him "loss of earnings and loss of earnings capacity, lost business opportunities, litigation expenses including attorney fees, loss of reputation, humiliation, embarrassment, inconvenience, mental and emotional anguish, and distress." Dkt. No. 1, Paragraph 47.

Plaintiff does not use the word employment in his Complaint, and he does not allege in his Complaint, expressly or implicitly, that: (1) he had been or was employed at the time the press release was issued, or (2) his employment was terminated or threatened as a result of the alleged defamatory statements.  Likewise, in his response brief, Plaintiff argued only that he had "successfully established a constitutional right that is protected by the Due Process Clause because the loss of <u>employment opportunities</u> w[as] due to the *false* statements by the defendants . . ." Dkt. No. 9, at 11 (emphasis added).  The words "employment opportunities" connotes employment scenarios that have not yet occurred, and the Court finds that Plaintiff has not alleged

14

that any other "right or status . . . recognized by state law was distinctly altered or extinguished" as a result of the allegedly defamatory statements by Defendants. *Paul v. Davis*, 424 U.S. at 711.

The Court addresses several cases cited by Plaintiff, none of which serve to alter the Court's conclusion.  First, Plaintiff argues that, in *Buckley v. Fitzsimmons*, 509 U.S. 259, 277 (1993), the Supreme Court stated: "Comments to the media have no functional tie to the judicial process just because they are made by a prosecutor" and

> Statements to the press may be an integral part of a prosecutor's job, . . . and they may serve a vital public function.  But in these respects a prosecutor is in no different position than other executive officials who deal with the press, and . . . qualified immunity is the norm for them.

*Id.* at 278.  The Court finds that *Buckley* does not alter the Court's analysis of this case in any manner because *Buckley* simply clarifies that: (a) a prosecutor's comments to the press are to be evaluated in the context of qualified immunity (which is the standard the Court has applied), and (b) prosecutors are not afforded absolute immunity for such comments.

Second, Plaintiff's reliance on *Burns v. Reed*, 500 U.S. 478, 486 (1991), is similarly misplaced.  The *Burns* court stated that "[t]he presumption is that qualified rather than absolute immunity is sufficient to protect government officials in the exercise of their duties." *Id.* at 486-87.  In *Burns*, the court considered "whether the

15

absolute prosecutorial immunity recognized in *Imbler* is applicable" to the defendant's actions. The *Burns* court held that a prosecutor's act of giving advice to police is not one that is "closely associated with the judicial process," and absolute immunity is not available under those circumstances. *Id.* at 495-96. Consistent with the holding in *Burns*, no consideration of absolute immunity has been employed in analyzing this case.

Third, two cases involving false statements made to the news media upon which Plaintiff relies are distinguishable because: (1) the courts were considering judicial – not prosecutorial – acts; and (2) more importantly, the immunity at issue centered on whether the actor was entitled to absolute – not qualified – immunity. *See Barrett v. Harrington*, 130 F.3d 246, 261 (6th Cir. 1997) (emphasis added) (addressing whether a judge's "allegedly false statements to the media qualify for <u>absolute judicial immunity</u>"); *Harris v. Harvey*, 605 F.2d 330, 336 (7th Cir. 1979) (emphasis added) (addressing contention of a judge "that he was <u>absolutely immune</u> for his comments as a government official" in the context of extrajudicial/nonjudicial acts).

Fourth, the *Valmonte v. Bane* case cited by Plaintiff is not controlling because it is from the Second Circuit. *Valmonte v. Bane*, 18 F.3d 992 (2d Cir. 1994). Even if *Valmonte* were a Supreme Court or Sixth Circuit case, the Court finds that the facts and holding in that case did not create a clearly established constitutional right

16

applicable in this case.  As Plaintiff notes, *Valmonte* involved: (1) the inclusion of names of persons on a registry "that identifies individuals accused of child abuse or neglect, and [the state's] communication of the names of those on the list to potential employers in the child care field," and (2) whether an individual's inclusion on that registry "implicate[d] a protectible liberty interest."  *Id.* at 994.  But, as the court in that case recognized:

> [T]his is a unique situation, not previously considered in the case law. We also recognize that the Supreme Court has given indications that perhaps only those who are defamed while in the course of being terminated from government employment can state a cause of action for deprivation of liberty interest. . . . This statutory scheme is unique, . . .

*Id.* at 1002 (internal citations omitted) (emphasis added).  The Court finds that the factual circumstances of that case, which involved publishing a list of names pursuant a statutory scheme (not a press release), are dissimilar from the instant case.  The Court also finds that the rule of law set forth in *Valmonte* is at least inconsistent with (and perhaps contrary to) the binding Supreme Court precedent in *Paul v. Davis* and *Siegert*, as the *Valmonte* court essentially acknowledged. *Valmonte*, 18 F.3d at 1001. For that reason, the Court concludes that the "constitutional right" set forth in *Valmonte* does not constitute a "clearly established . . . constitutional right[] of which a reasonable person would have known." *Mullenix*, 136 S.Ct. at 308.

For the reasons stated above, the Court concludes that the "defamatory

17

publications, however seriously they may have harmed [Plaintiff's] reputation, did not deprive him of any 'liberty' or 'property' interests protected by the Due Process Clause." *Paul v. Davis*, 424 U.S. at 712.  The Court holds that Plaintiff's allegations *vis a vis* a deprivation of procedural due process rights under the Fourteenth Amendment are not sufficient to support a finding that Defendants violated a clearly established constitutional right of which a reasonable person would have known.  The Court grants Defendants' Motion to Dismiss Count I of Plaintiff's Complaint.

   2.    *Count II*

Plaintiff does not allege or argue that he was subjected to an actual criminal prosecution; rather, his claim in Count II is based on his "prosecution" stemming from the allegedly defamatory press release.  In order to overcome Defendants' assertion of qualified immunity, Plaintiff must establish that a prosecution by press release violates a clearly established right under the Fourth Amendment.  The Court finds that Plaintiff has not satisfied his burden.  The only authority cited by Plaintiff to support his theory that Defendants are liable for the "prosecution" by press release is *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1999).  The Court does not find Plaintiff's argument regarding the applicability of *Bivens* to the present matter persuasive.

As Plaintiff states, the *Bivens* court found a cause of action for a Fourth

18

Amendment violation based on an unlawful search and seizure, even though no prosecution was brought, because there was government intrusion without probable cause.[3]  *Id.* at 389, n.1.  Plaintiff then contends that the accusations in this case, made without probable cause, are comparable because they constitute government action against him in violation of his right of privacy.  Even if the Court were to conclude that Plaintiff's comparison is warranted and create such a right, there is no clearly established right under the Fourth Amendment for an individual to be free from a prosecutor making a statement about that individual to or for the press.  *See Siegert*, 500 U.S. at 233-34 ("so long as such damage flows from injury caused by the defendant to a plaintiff's reputation, it may be recoverable under state tort law but it is not recoverable in a *Bivens* action.").

The Court grants Defendants' Motion to Dismiss Count II of Plaintiff's Complaint.

### 3.    Count III

It is undisputed that Plaintiff's defamation claim in Count III is rooted entirely

---

[3]Plaintiff argues that Defendants misinterpreted *Katz v. United States*, 389 U.S. 347, 350 (1967), to mean that the Fourth Amendment does not protect the right to privacy when the Supreme Court held that the Fourth Amendment did "protect[ ] individual privacy against certain kinds of governmental intrusion…."  The Court finds that Plaintiff's argument is mistaken. Defendants only cited *Katz* for the proposition that "the Fourth Amendment cannot be translated into a general constitutional 'right to privacy,'" *id.* at 351, which does not in any way foreclose a finding that the Fourth Amendment "protects individual privacy against certain kinds of governmental intrusion." *Id.* at 350.

in state law.  Because no federal law claim remains before the Court, and because this case is in its preliminary stages, the Court concludes that the litigation of Plaintiff's state law claim would most appropriately be conducted in state court.  For those reasons, the Court declines to retain jurisdiction over Count III of Plaintiff's Complaint. 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction"); *Carnegie-Mellon v. Cohill*, 484 U.S. 343 (1988).  The Court dismisses Count III of Plaintiff's Complaint, without prejudice.

## IV.   CONCLUSION

For the reasons stated above,

IT IS ORDERED that: (1) Defendants' Motion to Dismiss is **GRANTED**; (2) Counts I and II of Plaintiff's Complaint are **DISMISSED WITH PREJUDICE**,  (3) Count III of Plaintiff's Complaint is **DISMISSED WITHOUT PREJUDICE**, and (4) Plaintiff's cause of action is **DISMISSED**.  Judgment will be entered accordingly.

IT IS SO ORDERED.

S/Denise Page Hood
Denise Page Hood
Chief Judge, United States District Court

20

Dated:  September 29, 2016

I hereby certify that a copy of the foregoing document was served upon counsel of record on September 29, 2016, by electronic and/or ordinary mail.

S/LaShawn R. Saulsberry
Case Manager